May it please the court, Jeff Pitzer here on behalf of the appellant Duane Straub. The panel will recall that Ms. Zussman and I appeared before your honors a year ago, February in 07, on the direct appeal in this case. And at that time this panel expressed an interest in one particular issue that had been raised. We're hearing music here. Did you hear the music? I could hear it. I could hear something. It sounded like pipes or something. No, it's gone. Oh, I know what it was. It was my clock chiming. Sorry about that. Oh, okay. That's okay. And I would also like to, if I could, reserve maybe four minutes of my time for rebuttal. But the issue when we were here previously that your honors expressed an interest in was whether or not my client, Mr. Straub, had been deprived of his constitutional right to a fair trial as the result of denial of immunity to a defense witness named Michael Baumann. And that had happened at the district court level without any evidentiary hearing having been held. So the panel remanded back to the district court to hold that evidentiary hearing. That happened in April of 07, April 24th to be exact. And in that hearing, the district court asked three specific questions to the parties and to the district court, three topics that it would like the parties and the court to inquire into. And one of those, in fact, the first one, I believe, was why was it exactly that Michael Baumann needed immunity in the first place? And that question actually goes to the heart of the very first element of the question, was the fact-finding process distorted? Your honors will recall that the Ninth Circuit has a number of different questions that should be applied when addressing immunity questions like this to defense witnesses. The first question is, was the evidence that the witness had to offer relevant? I don't think there's any dispute here that what Mr. Baumann would have testified to was relevant. It was an admission that the government's chief and chief of witnesses had made in which he had said, I shot a man, in the same time frame in which the particular shooting occurred that was at issue in this particular case. He was the only witness who put Dwayne Straub at the scene of the crime, the only witness, and he, according to even the district court, he was the government's crucial, he was crucial to the government's case. And without him, the district court found, the government could not have sustained a conviction on counts three and four which dealt with this particular shooting and which resulted in ten extra years of prison time for Mr. Straub. And so the question was... Counsel, let me mention to you the thing that bothers me the most about the case. I am not entirely clear from our precedence on whether the prosecutor has to have intentionally distorted the fact-finding process to justify a defense demand for immunity in the sense of I'm trying to distort the fact-finding process or only in the sense of I'm trying to immunize prosecution witnesses and I have no intention of distorting the fact-finding process because this will just bring out the truth. Answer what those prosecutors would think. It's very clear and the district court addressed this point, it's very clear that there have been a variety of cases on this point in this circuit and in other circuits and the words prosecutorial misconduct have been used. But I would submit that there is not necessarily a need that prosecutorial misconduct be proven in order to establish that the fact-finding process was distorted. I'm sympathetic to the argument that you make that it should not be required because ultimately this is not supposed to be a sanction for prosecutorial misconduct, I don't think. It's supposed to be enforcement of the due process clause to get a fair trial. Now, what is the best authority for that proposition? I can find authority that goes, that seems to sound as though it goes contrary to the view that I've just stated. Well, I think that basically the way the test has been crafted in this circuit and in the Third Circuit and in some other circuits, the very fact that the courts have said, including this court in the Lord case, have said that the critical inquiry is whether the defendant's right to a fair trial has been compromised. Whether the trial which is supposed to emerge a truthful and just result, has that been compromised or distorted? And this Court has identified two ways that that could happen. One is if the prosecutor does something deliberately that provokes the witness to invoke his privilege. And in this case, and that's when I turn back now to the first question this panel put to the district court and to the parties, as to why did Bauman need immunity? When we went back to the district court, the government and the district court had been working on a long series of stipulated facts. Most of them had to do with the vast wealth of benefits that were conferred upon the government's witnesses. But one of them, paragraph 9, in the stipulated facts, and that, I believe, is at excerpts of record page 82, the government stipulated that Michael Bauman was not the subject of any ongoing or contemplated criminal investigation, period. And when we got to the evidentiary hearing, the government expanded on that. And said Bauman, and I'm referring now to the transcript of the hearing at excerpts of record page 99 and going into 100, the government said Bauman was not in any way a target of the criminal prosecution. Bauman was nowhere on the radar screen, nowhere of concern to the government. He was not a target. We weren't after Bauman. We had no interest in Bauman as a criminal defendant. We had no evidence that Bauman was involved in this conspiracy at all, none whatsoever. That's quoting from the government. At the evidentiary hearing, Michael Bauman was right there at that hearing with his attorney, just like he was at trial. And so you would think. It raises two questions, counsel. It raises one for you and one for the government. The one for you is, okay, so why won't Bauman testify? And the question, of course, to the government is, okay, so why won't you give him immunity? Right. It's kind of a case 22, but I think I can answer the question. You say, at that juncture, why wouldn't Bauman just say fine and his attorney say fine? He can testify. He's free and clear. Well, immediately, beginning on page 101, after the government made those statements that he's they've got no evidence that he did anything, the government says, but I believe that Bauman was a member of the gang that the defendant was charged with basically kind of being involved with and running. The government says, I believe, Michael Bauman, you're a member of this gang. And remember, this is a criminal conspiracy case involving a gang that the defendant was part of. The government says, number two, Bauman has been found with this defendant in West Linn, which is part of outside of Portland, committing a criminal offense. So the prosecutor is like, okay, you're now – I believe you're a member of the gang and I believe you've committed crimes with Mr. Straub. And number three, you've loaned money. I know I have evidence that you've loaned money to Mr. Straub, so there's some sort of financial relationship. And so now Mr. Bauman's saying, geez, Mr. Straub's on trial and he ends up going to prison for 23 years, and one of the most experienced prosecutors in Oregon is saying he thinks I'm part of his gang. That's not very good. And then Mr. Hobb goes even further than that, and he says, in fact, and this is at Excerpts of Record page 103, he says, I think that Mr. Bauman, as a fellow gang member, will lie on the stand for Mr. Straub. In other words, he will commit perjury, which is a crime for which you go to prison. And he said, not only that, I'm prepared to call an expert witness who will say the gang members lie for one another. So I will prove you're a perjurer, Mr. Bauman. In other words, Mr. Bauman needed use immunity. Yes. My question is, supposing that you can't and haven't proved that the government purposely distorted the background process, does this mean that the court must grant use immunity in every instance? I think the answer is no. The court would not need to compel the grant of immunity in every instance. It would depend in every case on whether, based on an evidentiary hearing, the fact-finding process would be compromised or distorted by excluding that testimony. And so every case is different. In this case, though, we had a witness, Michael Bauman, who clearly could have been given immunity without any cost to the government, because the government conceded you don't have any evidence that anything is wrong. So it's different from all those other cases. Many of the almost every case, actually, involving this, the witness that the defense proffers has himself committed crimes, has already perhaps been indicted or is under investigation. And so to give a witness like that immunity, you're foregoing prosecution for a very serious criminal offense. And so that's a cost to the people. The government represent the people. But here, Michael Bauman, according to the government's own admission, had done nothing. They had no evidence. So they could have given him immunity from anything even the government was contemplating, very easily, at no cost, whereas the cost of the defense by the court of appeals. It seems to me as though that's not quite so. I mean, both propositions can't be true. We have no evidence, but we have evidence that he's in a gang. He's committed crimes with Straub, and he's loaned money to Straub in substantial sums. Since Straub is a dope dealer, and what the gang or conspiracy does is deal in dope, it would be a reasonable inference that the money is to acquire inventory or maybe weapons. It seems like both cannot be true. So I think you're saying that the government did indeed induce Bauman to invoke the privilege. Or am I wrong? No, you're absolutely right. There's no question that Bauman invoked the privilege. He had nothing to do with what the government said about its intentions and what it intended to accomplish in cross-examination. Now, the question is Let me ask you a hypothetical question that comes out of that. Let's just suppose, hypothetically, that the prosecutor had said nothing at all to cause crime with Straub and the money. All he had in there was the stipulation that Bauman is not a target. However, Bauman personally knew that he was, in fact, part of the gang and had committed crimes and had loaned Straub money. So a reasonable cross would give the government enough to make him a target. If the government did absolutely nothing in my hypothetical to let him know that, would the case, should the case come out different? I know we don't have to reach that, but I'm trying to figure out the test because, objectively, the fact-finding process would be just as distorted. I think the answer is, certainly based on how the standards have been with respect to that first prong, deliberate distortion of the fact-finding process by provoking an invocation of the privilege, that would not be met based on your hypothetical. If the government had not said anything at all, then we couldn't say that something the government did deliberately induced a reaction by the defense witness. Here, I think, though, it's very clear, and again, I want to be also clear, I'm not accusing the government, John Hobb, of misconduct. I know him, and I don't believe he would intentionally try to do anything wrong. I think he, like the district court said, was candidly disclosing, here's what I think in my head. I don't have any evidence, but this is what I think. And that was enough to prompt and provoke this witness in his attorney to invoke the Fifth, and enough to compel Judge Panner to conclude that that was appropriate in this case. And so the – it's the Williams v. Woodford case that the government cites on this proposition, and they say that unless the prosecution substantially interferes with a witness's free and unhampered right to testify, then there's no distortion of the process. But it goes on to say that undue prosecutorial interference arises when the prosecution intimidates the witness by threatening the witness with prosecution for perjury or other offenses. And that's exactly – immunity, whether the government said anything or not, because he knows he's been hanging around with Straub. Well, perhaps, perhaps, Judge. You know, his attorney clearly, I think, counseled him, and Judge Panner said probably wisely. And so – but here, we either can find clear that there was error in the finding on the first prong, did the prosecutor do anything deliberately? But then there's also another way to find that the process was distorted. That's the second prong of the test, which is, did the government give a benefit or immunity to one of its witnesses, and then deprive immunity, deny immunity to a defense witness who would have directly contradicted that government witness? Now, here's – Is that an alternative test or an additional test? I believe the case law is that it is alternative. I think in the Young and the Westerdahl cases, down the line, they say it's alternative. You don't have to find the first prong to find that the process has been distorted under the second prong. And here is where I think government or the district court clearly applied an inappropriate legal standard in analyzing this part of the test. Let me ask you a question. How would the testimony that Adams said he shot someone directly contradict, which I take it is your second test, Adams' testimony that Straub shot Eric? Because the jury, you know, yeah, Adams testified that Straub shot Garrett. And then in the very same timeframe, February, March of 2003, at night, which the shooting happened at night in the same part of town, Adams now says, he's visibly upset and glum, and he's asked why by Baumann, and he says, I just shot a man. Now, Judge Panner says, well, how do we know that that's true? Judge Panner says, he could have been joking. So essentially, the defense has to establish he wasn't joking. Or he could have been trying to act tough, the district court said also. And the defense can't prove he wasn't just trying to act tough. But I submit that that's a standard that is the literal and functional equivalent of proving a negative. How could you ever prove that he was not joking or trying to act tough? And then even raise the bar higher, the district court said, even if you were to establish defense that he wasn't joking, wasn't trying to act tough, even if you convince me that what he said was true, that he actually did shoot a man in that same timeframe, that doesn't necessarily prove that he would – that that testimony would clearly exonerate you, Mr. Straub, because he might have been referring to some other man that he shot. You know, just about four minutes. Yes, okay. Well, let me just skip 30 seconds to this, because to answer your question, the district court brought a standard to bear which is impossible to meet. It basically said he could have been shooting someone else, even though there was zero evidence in the record, that there was another person shot by Mr. Adams or by anybody else in the Portland area in this timeframe. And so the improper standard was brought to bear, and we could never meet that standard. But the appropriate standard, a preponderance of the evidence standard, that there's a direct contradiction, I think, has been met by the record, and the Court should reverse on that basis. Thank you, counsel. Thank you. We have a little over three minutes left. Okay. Thank you. Please support Kelly Zusman appearing on behalf of the United States. I think, Your Honors, this case really is a bit of a conundrum, because it doesn't fit neatly within the Westerdahl or Young line of cases. But I want to start off by reminding the Court that it is the defendant's burden to prove that there was a distortion of the fact-finding process. Judging... Counsel, let me tell you my problem with your argument on that. It seems to me that there pretty clearly is. You've got, I think, 11 witnesses who are all more or less involved in this series of daring crimes, home invasion, robberies of other dope dealers, and everybody either walks or gets a token sentence, except the one person that doesn't make the prosecutor's job a lot easier, and he gets 23 to serve. And the one witness the district judge said was crucial cannot reasonably be expected to testify without immunity. It seems like the distortion is clear. The problem that I have with the case is that there doesn't seem to be any prosecutorial misconduct. Yes, Your Honor. And, in fact, at page 12 of Judge Panner's opinion, he finds that the government never did refuse to grant Bauman immunity. The government was never asked to grant Bauman immunity. That struck me as a little hyper-technical, actually. The defense didn't even know about any of this until either the eve of trial or after trial had started. And then they said, we want immunity for this witness. Now, I suppose what the judge could have said at that point is, prosecution is an executive function. I don't grant immunity, though he thought he could grant immunity. He said so. But I don't grant immunity. But this trial won't be a fair trial if Bauman doesn't get it. So I'm going to grant a continuance until next Monday to give government counsel a chance to consult main justice and decide whether to grant immunity. And then either I'll dismiss the case because there can't be a fair trial for Stroud without immunity, or we'll go forward and hear from Bauman. That seems like a really practical way to deal with this last-minute request, and I don't see why that couldn't be done. Well, first off, there was never a request that that be done, nor has there ever been a suggestion raised within the context of this appeal that Judge Panner erred in failing to do the procedure that you outline. I think the problem here, though, is that Judge Panner found, and I don't think there's any dispute in the record, that we simply don't have an instance in which the government actually denied immunity to Bauman. And to address some of the concerns raised by the panel earlier, part of the problem here with asking the government to give immunity to Mr. What exactly was being asked of us? The defense asked the judge to grant immunity, and the judge said, I'm not going to do it, evidently being of the view that he himself had the power to grant immunity or not. The prosecutor never brought to the judge's attention the notion that the judge had no power either way. It was up to the prosecutor to grant immunity. And, Your Honor, if I may, Judge Panner has been a district court judge for a very long time. He was a trial judge in the Westerdahl case. I think this may have been his short-form way of approaching the issue. He certainly was well aware of the immunity requirements. So I just don't think it's fair to suggest that Judge Panner didn't know the law on who could have immunity. I agree with you. I bring it up only to suggest that everybody was short-cutting here. So it's a little hyper-technical to say nobody ever asked the prosecution. But that is a fact, and it's an undisputed fact. I want to get to a question that was raised by the panel earlier on if someone is entitled to invoke the Fifth Amendment, and Judge Panner found that the witness appropriately invoked Fifth Amendment concerns here, is that necessarily coextensive with a requirement, then, that the government grant use immunity? And I think the answer to that question has got to be no, simply because a witness comes forward and provides some impeachment as to a government witness. It does not necessarily require that the government give up its right to prosecute this person for who knows what crime they may have committed. Well, as opposing counsel says. Wait, that impeachment. Oh, sorry, go ahead. No, please go right ahead, Judge Kleinfeld. That impeachment was about the additional 10 to serve for using a weapon. Ten years turned on whether Adams had the gun or whether Straub had the gun. And the impeachment mattered. Go ahead. And I'm not suggesting that the impeachment wasn't relevant, but what I am suggesting is Judge Panner looked at the totality of the circumstances present at this trial and said that given the other impeachment as to Mr. Adams, given the other evidence, given the Pinkerton instruction, the fact that regardless of whether or not it was Adams or Straub who actually shot Mr. Garrett, either one of them could well have been liable under the Pinkerton theory. We also know that this is not the only home invasion robbery in which these two were involved and shots were fired, nor is it the only home invasion robbery in which these two were involved and someone was injured. So all of that together, I think, is what led Judge Panner to conclude, okay, this proffer for Mr. Bauman, it is relevant. And at trial, Judge Panner said, go ahead, put Bauman on the stand. Then if he invokes his fifth on cross, then that's fine. I'll let him remain silent. And it was the defense attorney who chose not to do that. Mr. Bauman's testimony was never excluded from this trial. It was the defendant who strategically chose not to call Mr. Bauman because he didn't want the witness taking the fifth in front of the jury. Yes, but then you have 11 prosecution witnesses, and Mr. Bauman is the only possible person to testify that the defendant did not fire the shot. Isn't there an effect of distorting the fact-finding process here? Well, first, the premise that Mr. Bauman would testify that it was not Mr. Straub who fired the shot, I would take issue with. What Mr. Bauman would testify to is that he overheard Mr. Adams say at some point in the winter of 03 in one of three possible bars that he just shot someone. He never said that he shot Garrett. That's terrific impeachment. That's terrific impeachment because Adams said on the witness stand, I never told anyone in a bar that I ever shot anyone. So it really doesn't matter whether it's the same guy or the same time or whether the jury thinks Adams just shoots people all the time. It's serious impeachment. But the nature of the exculpatory proffer is relevant to the due process consideration. Was there a fair trial? Now, let's say, for example, that this defense witness was, in fact, the third person who was present, Galen Amon. And let's say just for hypothetically that Galen Amon was going to come in and testify that, in fact, he saw Adams shoot, but he was unwilling to testify without immunity. I think there we would have a completely different calculus. And there, if the government refused to grant Mr. Raymond immunity in that circumstances, we may well have a distortion of the fact-finding process. What do you do with this language in Westerdahl? It says, for the government to grant immunity to a witness in order to obtain his testimony, that would be Adams, while denying immunity to a defense witness whose testimony would directly contradict that of a government witness, that's a fact-finding distortion we intended to prevent and lord. Now, it seems to me there's a direct contradiction. Adams says, I never told anyone in a bar I shot somebody. And Bowman says, I heard him tell somebody in a bar he shot somebody. Right. It is a direct contradiction, but in order to establish that it has distorted the fact-finding process, it's got to be key and it's got to be important. For example, what if Adams got on the stand and said, I've never shoplifted before, and Mr. Bowman was going to get on the stand and say, yes, he did. Well, that would be impeaching. That would be a contradiction. Yet, could we say that there was a distortion of the fact-finding process based solely on that? There's got to be a spectrum here. But there is a difference between the shoplifting and Bowman, who's going to place Adams in a contemporaneous time period with a weapon in his hand saying, I shot a man, which is the crime that we're accused of here. I understand the shoplifting example. And if it were shoplifting, we probably wouldn't be here. But it's not. There is the possibility here that Adams shot Garrett. Yeah. And if that's true, and if the jury still believes that both Adams and Straub were present, they're both guilty of that offense. They're both guilty of that shooting. That's why we gave the Pinkerton instruction. That's why Mr. Hobb, during his closing, argued that it doesn't matter. Because the defendant argued it was big mix. It was Adams who was the shooter. He suggested that it was Adams who was the shooter at Jacob Adams' house where shots were fired. But our argument to the jury, the instructions that were given by the court that were not objected to, told the jury, it doesn't matter. So long as you find that they were both there, and it was reasonably foreseeable that one of them was going to have a gun, then they're both liable. Now, Judge Panner, I think, appropriately found. What do you have? I agree with you. In a way, it doesn't matter who was the shooter, if that's the way the case is tried. But suppose the jury thinks Adams is a total liar. We can't believe anything Adams says. What would you have then for the additional 10 to serve? I'm sorry? What would you have left? Suppose the jury decided to disbelieve everything Adams said. What would you have left? Well, we would have testimony from Misty Donde, who overheard the planning between Straub and David Adams, and Sherry Wilson, who Mr. Garrett was the victim of this robbery, and it was his ex-girlfriend, Sherry Wilson, who tipped Mr. Straub and Mr. Adams off to the fact that there's this marijuana grow, my ex-boyfriend is sitting there guarding the stash, I'm really angry at him, so go get him. And, in fact, she wanted them to tie him up and beat him up. So we have Misty Donde, who testified about the planning. We also have Detective Hoskins, who overheard a phone conversation between Mr. Mockley, who was the informant that we were using, and the defendant one week prior to the Garrett robbery, in which Mr. Straub told Mr. Mockley, we're going to pull one soon, we're going to go in with guns, we're going to steal drugs. So we do have some corroboration. But if the jury disbelieved Mr. Adams entirely, then they would probably do what they did with count two, which is they would have acquitted. Let me go back to the Pinkerton obstruction. If I understood you correctly, you said that it didn't matter if Adams shot Garrett as long as the jury found that Straub was present in the room. Now, in the stipulation as to Adams, you've given Adams use immunity except with respect to violent crimes, which means that if the government thought that Adams committed this, then you could still prosecute Adams for this. That's correct. But in the meantime, Adams has been prosecuted, drew a low sentence, and is out. That's also correct. But I think if you look at the transcript of the sentencing hearing for Mr. Adams, and particularly the colloquy from his defense attorney, Mr. Schindler, Mr. Adams, at the time he testified, did not know that we were only going to go against him on the witness tampering count. He didn't know that he wasn't going to be exposed to additional criminal liability. Mr. Schindler talks about how he provided this wealth of information about the very violent activities that he and Mr. Straub engaged in over a very lengthy period, and he did so not knowing what the result was going to be. Now, we urged Judge Moskvin to impose a 24-month sentence in that case. He ended up with a 15-month sentence. And all of that's true. And the prosecutor, Mr. Hobb, simply felt that the information provided by Mr. Adams and the efforts that he had made at rehabilitation were sufficient, that he opted I'm sorry. Did you say that the government urged 24 months? That's correct. The stipulation says 6 to 12. That was after a disputed fact-finding at sentencing on whether or not an eight-level enhancement applied to the witness tampering charge for threatening physical injury. If you look at the transcript, we initially urged 24 months. When Judge Moskvin rejected the eight-level enhancement, it brought it down to a 6 to 12-month range. And then consistent with our plea agreement, we urged the Court to impose a low-end sentence. I think Judge Panter appropriately here defined what he had in front of him as the testimony from Mr. Baumann would have provided some additional ammunition. Let's not forget here that Mr. Adams was not presented to the jury as a war hero or as a pillar of the community. Mr. Adams appeared in front of this jury as a co-conspirator with Mr. Strauss, as someone who engaged in a lot of violent and illegal activity. He was shown to have lied to the police in the past. He was shown to have actually been, I think, arrested at one point for threatening his own grandmother. So in the totality of the circumstances presented to Judge Panter, I think he appropriately found that in this particular case there simply was no distortion of the fact-finding process by failing to compel the government to grant immunity to Mr. Baumann in this circumstance. Do you have a view on whether defense counsel is correct that it's an or rather than an and between the two branches? I do, Your Honor. I agree with that. I think my understanding of the legal test is that it's either that the government has somehow frightened or coerced the person into invoking, and alternatively that there has been a distortion of the fact-finding process through the grant of immunity. Unless there are any further questions, I will submit. No, thank you very much, counsel. Thank you, Your Honor. We have 3 minutes and 23 seconds. Thank you. Just to respond briefly to a few of Ms. Zussman's points, she said that the testimony that the defense witness, being proffered, has to offer has to be found to be important. Otherwise, excluding it, obviously, if it's not important, would not distort anything. And that's the government's position here, that Mr. Baumann's testimony about what he heard Mr. Adams say was just simply not important. But Mr. Straub was facing 10 years in prison. That's a long time, 10 extra years in prison, based on this one particular incident. He's going to be punished for all of his other wrongdoing, but this was an added 10 years. And Mr. Zussman ---- But, counsel, I have a question about the Pinkerton theory. Sure. How do you respond to counsel's argument about ---- because if Pinkerton had, it would have made any difference. We briefed this fairly extensively and in detail in the opening appeal. And the ---- those briefs really cover the issue. But the reality is that the way the instructions were given to the jury, Judge Panner reversed the instructions for count 3 and count 4, and the way that was ---- the manner in which that was done, basically, I submit, required the jury to find that Straub was the shooter. It sort of cut the legs out from under the Pinkerton thing, theory. But ---- I'm kind of mixed up on what you just said, because in preparing for the argument today, I did not reread the briefs from the first case a few years ago. Maybe instead of arguing by reference to what I didn't read, you could just state why the Pinkerton theory doesn't matter. Well, basically, the judge, the way he instructed the jury, he told the jury, you need to find that Mr. Straub committed this robbery. That's what the jury ---- and then you can go on to decide whether or not he's guilty under 924C. But the way it was instructed, by reversing the order of the instructions, the first thing the jury heard was, you need to find Straub was the guy. And the government clearly believed itself that it needed to convince the jury that Straub was the actual shooter. Mr. Hobb argued that in his opening statement. He argued it again in his closing argument. Straub is the shooter. We know that because David Adams told us that. And Judge Panner himself addressed this issue. And he said, even in light of Pinkerton, even in light of those arguments, I believe as a matter of law that the government could not have sustained its conviction on counts three and four without David Adams. He was crucial. And Judge Panner found that explicitly. He said he addressed Misty Donde's testimony, and he said none of that other testimony, Misty Donde and Mockley, that would not have produced a conviction. The government had to have Adams, and the jury had to believe Adams. And even the government says that Adams was not believable. He's a liar. He's a thug. He's a criminal. He threatened his own grandmother with violence. Counsel, the stipulation that you and the government entered into is striking for the number of witnesses that the government granted immunity to, 11 witnesses. Yes. Of those 11 witnesses, how many of them actually testified to the shooting? That's really what's at issue here, right? It's the marginal 10 years that he gets because he's used a weapon. Yes. So how many of them actually testify or contribute something to the conclusion that Straub is the shooter? Adams, I believe. Is it only Adams? Yes. I'd have to refer back. I can't remember if Misty Donde was given immunity. Is your argument for distortion as good if it's just an Adams versus Bauman problem and we don't have 11 witnesses? You see, it looks like the government was handing this stuff out like candy and won't give it to Bauman. But if it's just Adams versus Bauman, that's not nearly as impressive. Well, it is if you consider the fact that Adams was the government's only witness that put Duane Straub at the scene of the crime. Without him, they didn't have a case. And they gave him basically forgiveness of prosecution of this very crime, 10-year crime. He wasn't even prosecuted, much less for a host of other crimes that he could have that he admitted and the government has stipulated that he committed. And so the bottom line is, I would submit, yes, our case is just as good if it were only David Adams. He was the key witness and the critical witness, and Judge Panner characterized him as the crucial witness that was needed. All right. Thank you, counsel. Did you have any further questions? Judge Kleinfeld, any further questions? No, thank you. Thank you. I appreciate it.  The case was well argued on both sides. The case will be submitted. The Court is adjourned for today.
judges: Nelson, Kleinfeld, Bybee